# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2215

_____

William A. Armstrong,          *
                                      *

        Petitioner/Appellant,    *

                                      *   Appeal from the United States
     v.                        *   District Court for the
                                        *   Eastern District of Missouri.

Mike Kemna,              *
                                      *

        Respondent/Appellee.   *

_____

Submitted: September 9, 2003
Filed: April 12, 2004

_____

Before WOLLMAN, BOWMAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

William Armstrong (Armstrong) was convicted in a Missouri state court of first degree murder, two counts of first degree assault, and three counts of armed criminal action. He was sentenced to life imprisonment on the murder count and sixty years imprisonment on the other counts. After failing to obtain relief from Missouri state courts, Armstrong filed a federal habeas application under 28 U.S.C. § 2254. The district court[1] denied Armstrong's application, but granted him a certificate of appealability on all issues covered in the court's order. We affirm, in part, but

_____

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

remand this case to the district court for the limited purpose of addressing two unresolved issues.

## I. BACKGROUND

On January 6, 1996, Armstrong and a few companions, including Armstrong's brother, Solomon Armstrong (Solomon), Charles Brown (Brown), and Antwon Hamilton (Hamilton), traveled from Milwaukee, Wisconsin, to Hayti Heights, Missouri. That evening, the group went to a bar. At the bar, Terrell McGee and Diane Davis began arguing. As the argument escalated, McGee family members, Davis family members, and Armstrong got involved. The bar owner ordered everyone out of the bar, and the argument continued in the parking lot. As the crowd made its way to the parking lot, shots were fired, killing Carlos McGee (McGee), and wounding Yolanda Childress and Devonne Davis.

Armstrong left the scene and went to the home where he was staying. Later that evening, the police arrived and arrested Armstrong and his companions for the shootings at the bar. While the police were arresting Armstrong, shots were fired from outside the home, wounding a police officer. Emerson Branch, who was at the bar earlier in the evening, was later convicted of shooting the officer. The bullet that wounded the police officer was the same caliber as the bullets found at the bar and on McGee's hospital gurney.

Armstrong was charged with and tried for murder in the first degree, two counts of assault in the first degree, and three counts of armed criminal action. A state public defender represented Armstrong. At trial, several witnesses, related to the McGee family, testified Armstrong was the sole shooter. Armstrong testified someone else did the shooting, but he did not identify the shooter. Having returned to Milwaukee, Armstrong's companions did not travel to Missouri to testify at Armstrong's trial. The reasons for these witnesses not testifying are at the heart of this appeal.

Armstrong's trial counsel (trial counsel) alerted the trial court to her inability to subpoena the out-of-state witnesses (i.e., Solomon, Brown and Hamilton), because the Wisconsin Attorney General's Office informed her Wisconsin would not recognize the subpoenas. Trial counsel also informed the court the Missouri Public Defender's Office does not advance funds to witnesses for transportation to trials. Although trial counsel advised the court her office would have paid for bus tickets, she failed to procure bus tickets for the witnesses. It was not until the last day of trial that trial counsel sought a short continuance to allow the Milwaukee witnesses time to travel to Missouri. During this discussion, Armstrong interrupted and told the trial court the witnesses were not present because trial counsel failed to get them there, even though he had prompted his trial counsel for months to secure the witnesses' attendance at trial. Armstrong later told the trial court he was dissatisfied with his trial counsel's representation and had tried to remove her from his case. The trial court, which was not provided the absent witnesses' expected testimony, denied the motion for a continuance. Armstrong's companions did not testify at trial. Armstrong was convicted.

On direct appeal, Armstrong raised two issues: (1) the prosecutor's closing argument deprived Armstrong of due process and a fair trial; and (2) the trial court abused its discretion in denying the motion for a continuance to secure the attendance of Solomon and Hamilton. Armstrong did not contest the sufficiency of the evidence against him. The Missouri Court of Appeals held the trial court (1) did not err in allowing the closing argument, and (2) did not abuse its discretion in denying the motion for a continuance. In deciding the continuance issue, the Missouri Court of Appeals stated Armstrong's argument did not yield "a clue about what these witnesses would have testified to or how their testimony would have aided the defense." The Missouri Court of Appeals also concluded the trial record revealed Armstrong could not have secured the presence of his witnesses "any time in the reasonably foreseeable future." Thus, the Missouri Court of Appeals affirmed the judgment against Armstrong. Armstrong then sought post-conviction relief. Neither

the state trial court nor the Missouri Court of Appeals considered the merits of the claims, because Armstrong filed the post-conviction relief motion late.

Obtaining no relief in Missouri state courts, Armstrong turned his attention to the federal courts. Armstrong filed his application for a writ of habeas corpus under 28 U.S.C. § 2254 in federal court, raising numerous grounds for relief. In his habeas application, Armstrong swore his "witnesses would have testified that I did not have a weapon, nor was I arguing with anybody, and that someone else from the McGee family were [sic] shooting at us. Someone who they were arguing with in the club. My witnesses names are Antwon Hamilton, Solomon Armstrong, and Charles Brown."

In a hearing on February 14, 2002, the district court secured the testimony of trial counsel, who stated she or her investigator had spoken to all three out-of-state witnesses. Trial counsel said Brown would have testified he did not witness the shooting, but never saw Armstrong with a gun. Trial counsel also said Hamilton and Solomon would have testified they could not identify the shooter, but that Armstrong was not the shooter. Trial counsel considered two options to secure the attendance of the witnesses at trial: send an unenforceable subpoena and expense money to the witnesses; or send bus tickets to the witnesses with a promise to pay for their lodging and meals. Trial counsel decided against the first option, because a subpoena was unenforceable. Trial counsel testified that, although the out-of-state witnesses indicated they would testify at Armstrong's trial, the second option fell through, because she could not contact the witnesses as planned. Trial counsel testified she arranged a conference call with Solomon and Hamilton a week before trial to discuss travel arrangements. When trial counsel initiated the call, Armstrong's mother answered and told trial counsel one of the witnesses was sleeping and the other witness was not there. None of the out-of-state witnesses contacted trial counsel until the first day of trial, when Solomon called trial counsel and told her he would travel

by bus to Missouri that night to testify at his brother's trial. Trial counsel arranged for Solomon to call her when he arrived in Missouri, but Solomon never called.

The district court found sufficient cause to excuse Armstrong's procedural default in state court, because a state-employed prison librarian gave Armstrong the wrong deadline for filing his post-conviction relief motion. Thereafter, the district court denied Armstrong's habeas application. In denying habeas relief, the district court discussed the critical issues surrounding Armstrong's witnesses and the related continuance issue. Specifically, the court discussed the trial court's denial of the continuance, as well as the ineffective assistance of counsel claims relating to trial counsel's failure to secure the attendance of Armstrong's witnesses. The district court also discussed the prosecutor's closing argument and ineffective assistance of appellate counsel claims. The district court granted a certificate of appealability on all issues covered in its order.

On appeal, Armstrong's court-appointed attorney argues two points. First, he contends the state court denied Armstrong a fair trial by denying a continuance to secure the attendance of Armstrong's out-of-state witnesses to testify at trial. Second, he contends trial counsel was ineffective by failing to secure the attendance of Armstrong's out-of-state witnesses at trial. Armstrong individually submitted a number of pro se briefs, which appear to raise actual innocence claims.

## II.    DISCUSSION
### A.    Standard of Review
Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court grants habeas relief if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)-(2). When a state

court has not addressed an issue, a federal court cannot apply the deferential AEDPA standards. See Taylor v. Bowersox, 329 F.3d 963, 968 (8th Cir. 2003). We review de novo the district court's legal conclusions and its factual findings for clear error. Id.

### B.     Denial of Motion to Continue

Armstrong argues his due process rights were violated when the trial court denied his motion for a continuance to secure the presence of the out-of-state witnesses. For support, Armstrong contends Lee v. Kemna, 534 U.S. 362 (2002), held "the denial of a continuance by a state court in a murder trial in order to secure the presence of witnesses violated that Petitioner's due process rights thereby depriving him of a fair trial." Armstrong misreads Lee. In Lee, the Supreme Court did not reach the merits of the due process claim. Instead, the Court addressed whether Lee's due process claim was procedurally barred by the application of state law independent of the federal question. Holding Lee was not procedurally barred by the technical application of state law, the Supreme Court remanded Lee's due process claim so the district court could analyze the merits of the claim. Id. at 387-88. Because we address the merits of this claim, Lee does not control the outcome of this issue.

Armstrong did not specifically inform the trial court when the absent witnesses would arrive for trial, nor did Armstrong inform the trial court about the substance of the absent witnesses' testimony. In deciding the continuance issue, the Missouri Court of Appeals stated Armstrong's argument does not yield "a clue about what [his out-of-state] witnesses would have testified to or how their testimony would have aided the defense." The Missouri Court of Appeals also concluded the trial record revealed Armstrong could not have secured the presence of his witnesses "any time in the reasonably foreseeable future."

The district court concluded the trial court's denial of Armstrong's motion for a continuance, and the Missouri Court of Appeals affirmance of that denial, was not contrary to, or an unreasonable application of, clearly established Supreme Court law. We agree. The Supreme Court has recognized "[t]rial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Morris v. Slappy, 461 U.S. 1, 11 (1983). Consequently, a trial court has broad discretion to grant or deny a motion for a continuance. Id. The trial court heard Armstrong's request for a continuance, but was not provided the expected testimony of the absent witnesses nor was the court advised when these witnesses would be available to testify. Without some basis to delay Armstrong's murder trial to await the possible arrival of absent witnesses with unknown testimony, the trial court denied the continuance motion. Because we see no sign the trial court abused its broad discretion in denying the continuance motion, we hold AEDPA's standards for habeas relief have not been met.

## C.     Ineffective Assistance of Counsel[2]

Armstrong's overriding complaint is his out-of-state witnesses did not testify at his trial, but should have. Armstrong contends his trial counsel's deficient performance was of constitutional proportion. To prove his counsel rendered ineffective assistance, Armstrong must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). First, Armstrong must show his counsel's performance was deficient, i.e., objectively unreasonable. Id. at 688. Armstrong must overcome "a strong presumption that counsel's conduct falls within

---

[2]Because Armstrong filed his state post-conviction relief motion late, the state courts did not review the ineffective assistance claims. However, the district court found cause to avoid procedural default on these claims. Thus, the district court did not review Armstrong's claims under AEDPA's standard of review. As we have no state court decisions to review, we also do not use AEDPA's standard of review.

the wide range of reasonable professional assistance." Id. at 689. Second, even if Armstrong satisfies the first prong, he must show the deficient performance prejudiced him with an unreliable or fundamentally unfair outcome. Id. at 692.

### 1. Failure to Secure Attendance of Witnesses

Armstrong claims trial counsel's "misconduct in fumbling the attendance of the witnesses raises [sic] to a level near that of res ipsa loquiter [sic]." Armstrong complains that "[b]ringing exculpatory witnesses to trial is clearly a reasonable obligation of a trial attorney and the failure to do so cannot be defended as a sound trial strategy." Armstrong claims he suffered prejudice because he was forced to endure a trial for his life based on shaky evidence, "state witnesses with an ax to grind," and without the assistance of favorable witnesses.[3]

The testimony of Armstrong's companions was obviously important in this murder case. Trial counsel knew this and attempted to secure the attendance of these witnesses at trial. The district court found trial counsel explored two options to secure the attendance of Armstrong's witnesses, and chose to implement one option. Theorizing the failure of the witnesses to appear at trial may have been based on "miscommunication or lack of initiative on the part of the witnesses," the district court concluded trial counsel's efforts to get Armstrong's out-of-state witnesses to appear at trial were not objectively unreasonable.

---

[3]We recognize Armstrong personally did little to secure the attendance of his brother and traveling companions at trial. The record paints a picture of witnesses not the least bit motivated to travel to Missouri to testify in this murder case. Regardless of the amount or lack of assistance provided to trial counsel by Armstrong and his witnesses, the proper focus is on trial counsel's performance. Could trial counsel have compelled the witnesses' attendance? Was trial counsel's performance objectively unreasonable and prejudicial to Armstrong's defense?

For reasons unknown to us, the record does not reference two statutes which are critical to disposing of Armstrong's ineffective assistance claims. Both Missouri and Wisconsin previously adopted the Uniform Act to Secure the Attendance of Witnesses From Without the State in Criminal Proceedings (Uniform Act). See, e.g., Mo. Rev. Stat. § 491.420 (witnesses from another state summoned to testify in this state); Wis. Stat. § 976.02 (uniform act for the extradition of witnesses in criminal actions). Trial counsel could have secured the attendance of the out-of-state witnesses at trial had she availed herself of these statutes. However, the record does not mention these statutes or whether trial counsel, or the various courts, considered these statutes. Therefore, we remand this issue to the district court to review Armstrong's ineffective assistance claim in light of these statutes. If the district court believes an evidentiary hearing is necessary, it shall conduct one and make findings of fact. When analyzing the impact of these statutes on the ineffective assistance claim, the district court should address both prongs of the Strickland analysis, providing the court's findings of fact and conclusions of law. See, e.g., Garton v. Swenson, 497 F.2d 1137, 1140 (8th Cir. 1974), remanded to 417 F. Supp. 697 (W.D. Mo. 1976); see also Scott v. Roberts, 777 F. Supp. 897, 898 (D. Kan. 1991); Davis v. Coiner, 356 F. Supp. 695, 698 (N.D. W. Va. 1973).

### 2. Failure to Secure Continuance

Missouri has detailed procedural rules to secure trial continuances. See Mo. Sup. Ct. R. 24.09, 24.10. Armstrong's trial counsel failed to follow these procedural rules when requesting a continuance, and the trial court did not mention the rules in denying the continuance. The district court concluded trial counsel's failure to comply with the continuance rules or to secure a continuance did not constitute ineffective assistance of counsel. Armstrong has not raised, briefed, or argued this issue. Instead, Armstrong focuses on trial counsel's failure to secure the attendance of the witnesses at trial. We believe the resolution of the unresolved issue discussed above may impact the resolution of this issue as well. Thus, we also remand this

issue to the district court to analyze the Uniform Act's impact, if any, on the ineffective assistance claim regarding trial counsel's failure to secure a continuance.

### 3. Failure to Object to Prosecutor's Closing Argument

In concluding his rebuttal argument, the prosecutor made the following statement: "We've got a danger in our society today. The danger is not of convicting innocent people, the danger is letting the guilty people like this Defendant go. We've got an epidemic of crime. We've got to do something and this is your chance. The officers have done all they can. The witnesses have done all they can. In a second I'll sit down and I've done all I can do and then the only thing you can, the only person that can do anything about it is you. You stand between this Defendant, this murderer, and the front door of this courthouse. Please do not let him get by." Armstrong's trial counsel moved in limine to exclude argument about not convicting innocent people, but the trial court denied that motion. Trial counsel renewed her objection after the prosecutor's closing argument, and the trial court stated it had already denied the motion. On direct appeal, Armstrong's appellate counsel argued the prosecutor's closing argument deprived Armstrong of a fair trial. The Missouri Court of Appeals rejected this argument, holding the trial court did not err in allowing the argument.

Armstrong listed his trial counsel's failure to object to closing argument as one of his numerous ineffective assistance claims. The district court thoroughly discussed this ineffective assistance claim, including a discussion to determine whether the closing argument prejudiced Armstrong. The district court denied habeas relief on these grounds, and, quoting Sublett v. Dormire, 217 F.3d 598, 600 (8th Cir. 2000), noted "the combination of the strict due process standard of constitutional review, the deferential review mandated by the AEDPA, and our less reliable vantage point for gauging the impact of closing argument on the overall fairness of a trial results in an exceptionally limited review." The district court concluded the state court decisions allowing the argument did not violate clearly established federal law, because the

-10-

arguments were not unconstitutionally prejudicial. Quoting Sublett, 217 F.3d at 601, the district court recognized "a jury's common sense ability to put aside a particular type of overzealous advocacy with the help of the court's standard instruction that the arguments of counsel are not evidence." The district court decided trial counsel's failure to object was not objectively unreasonable, because she filed a motion in limine and renewed her objection after the closing argument. We agree.

In rebuttal, the prosecutor also referenced the absent out-of-state witnesses: "All the witnesses [who testified] said that [Armstrong killed McGee and shot two girls]. But there's some other witnesses you didn't hear from them. His four buddies. If what [Armstrong]'s saying is true, don't you think they'd be here backing him up? They ain't here." Trial counsel did not object to this argument. The district court found this argument did not violate Armstrong's right to a fair trial, whether analyzed as an ineffective assistance claim or independently as a due process claim, because the argument was made during rebuttal, after Armstrong's trial counsel had already offered personal opinions about the case. Citing United States v. Young, 470 U.S. 1 (1985), the district court concluded any potential harm resulting from the closing argument "was mitigated by the jury's probable understanding that the prosecutor was countering defense counsel's remarks as well as the overwhelming evidence of the defendant's guilt."

Because the failure to object to closing argument was not raised, briefed, or argued on appeal, we will not address it further. Agreeing with the district court, we conclude the prosecutor's closing argument does not necessitate habeas relief.

### 4.    Appellate Counsel's Alleged Deficiencies

In his habeas application, Armstrong faults his appellate counsel for failing to raise ballistic issues on appeal, failing to raise the issue of sleeping jurors, failing to raise ineffective assistance claims, and failing to adequately argue the continuance issue. On appeal, Armstrong has not raised, briefed, or argued the ineffective

-11-

assistance of appellate counsel claims. Regardless, we conclude the district court appropriately denied habeas relief on these grounds. <u>See</u> 8th Cir. R. 47B.

### D. Actual Innocence Claim

Armstrong submitted numerous handwritten, pro se briefs to us. On the one hand, Armstrong claims he was wrongfully convicted and has "new evidence because it was never submitted as evidence and exhibits for the juries [sic] review." On the other hand, Armstrong acknowledges "[t]here is no newly discovered evidence." In essence, Armstrong attacks the prosecutor for prosecuting him knowing Armstrong is innocent, and also condemns his trial counsel for failing to adequately defend him. Claiming he was wrongfully convicted of crimes he did not commit, Armstrong asks us to grant him an evidentiary hearing so he can explain to the district court why he is innocent. In the alternative, Armstrong asks us to discharge him from prison for being wrongly convicted. In essence, Armstrong contends he is innocent of the crimes for which he was convicted, and asks this court to avoid a fundamental miscarriage of justice by applying the principles enunciated in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). The district court did not specifically address these arguments. Out of an abundance of caution, we have reviewed Armstrong's pro se arguments and the record, and we find no new evidence supporting Armstrong's innocence claim. <u>See</u> <u>Jones v. Jerrison</u>, 20 F.3d 849, 856 (8th Cir. 1994) (considering pro se arguments on appeal for first time "out of an abundance of caution and without establishing any rule for doing so in future cases"). The testimony of the out-of-state witnesses was certainly available at the time of trial. Thus, we reject Armstrong's pro se actual innocence claim. However, as discussed above, Armstrong will have the opportunity to re-address the issue of whether his trial counsel's failure to secure the attendance of the out-of-state witnesses constituted ineffective assistance.

### E. Remaining Claims

The district court summarily rejected Armstrong's remaining claims as "either not cognizable, procedurally defaulted, or without merit." We agree and do the same. See 8th Cir. R. 47B.

## III. CONCLUSION

We neither reverse the district court nor grant the application for a writ of habeas corpus. Instead, we affirm the district court on all claims except the two ineffective assistance of counsel claims discussed above. On these two claims only, we remand the case to the district court for the limited purpose of considering whether trial counsel's failure to secure the attendance of the out-of-state witnesses or a continuance in light of the Uniform Act constituted ineffective assistance of counsel under Strickland. If necessary, the district court shall conduct an evidentiary hearing on these issues only. We affirm all other issues in the certificate of appealability.

WOLLMAN, Circuit Judge, concurring.

I concur in that portion of the opinion which remands the case to the district court for a determination of whether counsel's failure to secure the attendance of the out-of-state witnesses constituted ineffective assistance.

Because they may well be rendered moot by our ultimate holding on the ineffective assistance claim, I would reserve ruling on the remaining issues presented by the appeal until such time as it is necessary to do so.

_____