STATE of Iowa, Appellee,

v.

**Augustus Louis NANCE, Appellant.**

No. 94–511.

Supreme Court of Iowa.

June 21, 1995.

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., William E. Davis, County Atty., and Joseph A. Grubisich, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

The defendant was charged and convicted of murder in the first degree and willful injury. The defendant admitted he shot the victim, but claimed the shooting was accidental. On appeal he urges the trial court erred in admitting hearsay evidence, in admitting irrelevant gang related evidence, and in failing to grant his motion for a judgment of acquittal. We find the court erroneously allowed hearsay evidence and therefore reverse the convictions and remand for retrial.

## I. *Background.*

Joann Powell (Joann) died on October 20, 1993 as a result of a single shot to her head. Augustus Louis Nance, age nineteen, was arrested and charged with murder in the first degree in violation of Iowa Code sections 707.1., .2 (1993), and willful injury in violation of Iowa Code section 708.4.

Prior to trial the State notified the defendant that it intended to offer evidence of statements made by Joann regarding the sale of drugs and her fear of Nance. The State urged the evidence was admissible under the residual hearsay exception of Iowa Rule of Evidence 804. Nance then filed a motion in limine claiming the State's proposed evidence did not qualify because the statements did not have the equivalent circumstantial guarantees of trustworthiness required by the rule. In addition the motion asked that evidence of drug dealing or gang membership of Nance be excluded. Al-

though a hearing on the defendant's motion was conducted prior to trial, the court reserved ruling and suggested that counsel raise their challenge during trial.

At trial the State called Willie A. Shorter, a long-time friend of Nance. He testified that he was present when Joann was shot in Nance's apartment. Both he and the defendant testified Joann was shot with a .25 caliber automatic that accidentally went off while in Nance's hand. The trial court allowed, over objection, evidence to impeach the testimony of Shorter.

Over objection, Dick Powell (Powell), a boyfriend who had lived with Joann, was allowed to testify about Joann's expressions of what would happen to her if she did not give Nance his money. The court also allowed, over objection, the admission of four pages of notes found in the defendant's apartment that a detective identified as "gang notes."

The court denied defendant's motions for a judgment of acquittal made after the State rested and renewed at the close of all evidence. The jury found Nance guilty on both charges. The court entered judgment on the verdicts and the defendant was sentenced to life imprisonment without parole and a concurring sentence not exceeding ten years. Nance timely appealed the convictions.

## II. *Residual Hearsay.*

■ Rule 804 provides in part:

Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(5) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Iowa R.Evid. 804(b)(5). Aside from the requirement that the declarant be unavailable, the requirements of this rule are identical to the requirements of rule 803(24). The five-fold requirements for admissibility under rule 803(24), identified in *State v. Brown*, 341 N.W.2d 10, 14 (Iowa 1983), apply to the admissibility of hearsay evidence under rule 804(b)(5). These catch-all hearsay exception provisions should apply only when there is significant indicia of reliability.

Prior to the adoption of the Iowa rules of evidence in 1983, we admitted evidence of a homicide victim's fears of the accused as an exception to the hearsay rule. *See, e.g., State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979) (victim's fears were relevant in a murder case to show prior relationship between accused and the alleged victim); *State v. Fowler*, 248 N.W.2d 511, 515–16 (Iowa 1976), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 842, 59 L.Ed.2d 37 (1979) (a validly asserted homicide-related accident defense may, under appropriate circumstances, open the door to admission of "state of mind" testimony disclosing the victim's fear of his or her assailant); *State v. Hinkle*, 229 N.W.2d 744, 747 (Iowa 1975) (victim's fear of the accused, communicated by the victim to a third person, held admissible as a part of the *res gestae*, particularly where the killer's identity is in issue); *State v. Ebelsheiser*, 242 Iowa 49, 54, 43 N.W.2d 706, 710 (1950) (statements made some hours before the fatal event, to the effect that the victim was afraid to go into the house when defendant was there, were admissible as part of the *res gestae* ). The *res gestae* exception was subject to criticism and is no longer a part of our evidentiary rules. *State v. Ogilvie*, 310 N.W.2d 192, 196 (Iowa 1981).

The state of mind exception is rule 803(3). In *United States v. Brown*, 490 F.2d 758, 762

(D.C.Cir.1973), the federal court recognized a state of mind exception to the hearsay rule and allowed the admission of extrajudicial statements to show the state of mind if that is at issue. The statements may consist of direct or circumstantial evidence. *Id.* The court stated:

The threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is some substantial degree of *relevance* to a material issue in the case. While there are undoubtedly a number of possible situations in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant's claim of self-defense as justification for the killing.... Second, where defendant seeks to defend on the ground that the deceased committed suicide, evidence that the victim had made statements inconsistent with a suicidal bent are highly relevant. A third situation involves a claim of accidental death, where, for example, defendant's version of the facts is that the victim picked up defendant's gun and was accidentally killed while toying with it. In such cases the deceased's statements of fear as to guns or of defendant himself ... are relevant in that they tend to rebut this defense. Of course, even in these cases, where the evidence is of a highly prejudicial nature, it has been held that it must be excluded in spite of significant degree of relevance.

*Id.* at 767. We have cited with approval the *Brown* case. *Fowler,* 248 N.W.2d at 519.

▇▇▇▇ Here, the trial court admitted the testimony of Powell as to statements made by the victim twelve to fourteen hours before she was shot. Before Powell was called as a witness by the State, counsel for the defendant urged the court to prohibit Powell's testimony about Joann's fear of Nance. The court commented that evidence had been received in response to questions by both sides indicating that there was nothing but a good relationship between Joann and Nance. The court suggested if someone could say something to the contrary, he or she could testify based on the existing record.

During the State's examination of Powell he testified, without objection, that Nance had dropped off rock cocaine to Joann on October 19. She was selling it for him. He saw the drugs after Nance had left the apartment. He knew Joann owed Nance money for drugs. When the State attempted to introduce evidence of Joann's fear of Nance, defense counsel again raised the hearsay objection. The State urged the evidence was admissible under rule 804(b)(5) and was also admissible to contradict prior testimony of a close and kind relationship between the victim and the defendant. The court said:

I think what you are trying to elicit is maybe a statement of material fact. I think the record does disclose, both as to the testimony in response to the State, as well as the defendant's counsel's questions, the relationship between the victim and the defendant in this matter. And I am going to allow the question.

Counsel for the State then asked the following questions and Dick gave the following answers:

Q. I think you indicated in prior testimony that Joann Powell was selling cocaine for Mr. Nance. Was—if you know, was she selling it, or was she using it? A. Well, she was selling, but on this day she ended up doing it. Q. And by "doing it," what do you mean? A. She smoked it. Q. Now if you smoke it, you don't have any to sell; is that correct? A. Correct. Q. Did Joann Powell make any comment to you about getting the money for Mr. Nance? A. Yes, she did. Q. What was that statement she made to you? A. She said if she didn't give him his money, that he was going to fuck her up. Q. He was going to fuck her up? A. Yes. Q. And what did you take that to mean? A. I figured beat her ass.

THE COURT: Record should reflect, Mr. Feuerbach, that you have objected previously to that whole line of questioning, and you have objected to this, but my ruling has stopped you from doing so, other than in chambers.

Although the court found the hearsay statements were offered as a material fact, it made no findings as to other determinations required under rule 804(b)(5). Powell testified that both he and Joann had been and were using drugs at the time of the conversation. The autopsy of Joann found a very, very high concentration of cocaine in her blood at the time of her death. No other witnesses testified as to Joann's fear of Nance. The trial court made no finding of the necessary circumstantial guarantees of trustworthiness. It was an abuse of discretion for the court to allow the testimony relating to Joann's fears of Nance.

The State argues we should affirm the trial court ruling on a separate ground that the statements were not hearsay or were admissible as state of mind testimony permitted under rule 803(3). "[W]e will affirm a ruling which admits evidence over a hearsay objection on any proper ground appearing in the record, even if it was not raised below." *State v. Rawlings,* 402 N.W.2d 406, 409 (Iowa 1987).

Although Joann's comment was hypothetical in nature, not a statement of fact, we look at the purpose of the evidence to determine if it was offered to prove the truth of the matter asserted. We conclude her statement was offered as an assertion of her fear of the consequences of not paying the crack cocaine debt. It was hearsay evidence.

■ Although it may be "state of mind" evidence, it was inadmissible because the probative value of the evidence did not substantially outweigh the danger of unfair prejudice. Iowa R.Evid. 403. The admission of Powell's testimony about Joann's statement of fear was prejudicial error. Because we reverse and remand this case for retrial, we will review other evidentiary issues raised at trial that may arise on retrial.

### III. *Impeachment of State's Witness.*

■ Shorter testified on direct examination that Nance had said "brace yourself" or "one to the cranium" prior to the shooting. These words were a part of the lyrics of a rap song. He testified the words were said five or ten minutes before the shooting.

Shorter also testified Nance was on the telephone, seated on the couch, with the gun beside him when Joann entered the apartment. She asked the location of the iron and ironing board. When Nance hung up the phone, he tried to take the bullet out of the chamber of the gun by jerking it back and forth. While trying to remove the bullet from the chambers, Nance stood up and kind of jumped over the coffee table and that is when the gun went off.

On cross-examination, Shorter testified he told Nance to take the gun into the other room while he was trying to take the bullet out of the chamber, that Nance then stood up and the gun went off as he was going over the table.

The State used both Shorter's deposition testimony taken two days after the shooting while the defendant and his attorney were present and the testimony of a detective who took Shorter's statements on the evening of Joann's death. The deposition testimony, used in redirect examination of Shorter, stated Nance just got up, jumped up, jumped over the coffee table, pointed it, and POW. The statements to the detective made reference to the "brace yourself" comment made by Nance and that Nance jumped up quickly from the couch and jumped over the coffee table. This put him almost in direct contact with Joann. He saw Nance reach out with the gun, and the next thing he knew there was a sound of a single gunshot.

Defendant's counsel objected to the State's use of the detective's statement in its redirect examination of Shorter. The State then abandoned its attempt to use the statement in its examination of Shorter. Later the State called the detective to testify as to the statements made by Shorter to him on October 20. Over defendant's objections that it was not inconsistent evidence, was hearsay, and prejudicial, the detective was allowed to testify as to the statements made by Shorter.

■ A prior inconsistent out-of-court statement offered for impeachment purposes falls outside of the definition of hearsay. *State v. Sowder,* 394 N.W.2d 368, 373 (Iowa 1986). Generally, the credibility of a witness may be attacked by any party, including the

party that calls the witness. *State v. Trost,* 244 N.W.2d 556, 560 (Iowa 1976); Iowa R.Evid. 607. However, where the State calls a witness expecting the witness will give unfavorable testimony, and then in the guise of impeachment, offers evidence otherwise inadmissible, the court should exclude the evidence. *State v. Turecek,* 456 N.W.2d 219, 223–25 (Iowa 1990).

■ Contrary to defense counsel's argument, the impeachment of Shorter did not violate our *Turecek* decision. *Id.* The State did not call Shorter as a witness, expecting him to give unfavorable testimony, for the purpose of impeaching him with otherwise inadmissible evidence. The detective's testimony as to what Shorter said did not introduce any new ideas. Before receiving the detective's testimony, the court instructed the jury that the testimony was received for impeachment purposes. The impeachment instruction was also included in the court's written instructions to the jury. It was not error to allow such impeachment evidence. Although the State is now aware Shorter's testimony at retrial may be inconsistent in some respects with his prior statements, this awareness does not require the exclusion of the impeachment evidence. There was no violation of our *Turecek* decision at trial; it will not be a *Turecek* violation if the State uses the prior statements for impeachment purposes at retrial.

## IV. *Gang Evidence.*

■ In cross-examination of Shorter, defendant's counsel elicited testimony to show why Nance had a gun. Shorter testified he first saw Nance with the gun on October 20. Nance had the gun because he was nervous about "some guys" from "out of town." Nance had let them use one of his cars a few days earlier and they did something bad in it. When Nance refused their request to again give them a car, they started talking crazy to him. On redirect Shorter explained the guys they were worried about were gang members from Chicago and they had used Nance's car in a drive-by shooting.

The State called a detective who identified an exhibit as gang notes he had found in Nance's apartment. The notes were primarily a series of letters and numbers and were not readable or understandable. When asked why he felt the exhibit was gang notes, defendant's counsel raised a relevancy objection and called to the court's attention that the exhibit had not been tied to the case. The court sustained the objection. The witness then testified he had seen similar notes when searches had been made of gang member residences. Over defendant's objections the exhibit was admitted as evidence.

■ The State argues the exhibit was properly admitted because it was relevant on the issue of motive and absence of mistake or accident as provided under rules 403 and 404(b). Like evidence of cocaine delivery and distribution, evidence of gang membership and activity is inherently prejudicial. It appeals to the jury's instinct to punish gang members. *See State v. Liggins,* 524 N.W.2d 181, 188 (Iowa 1994). Because the probative value of the exhibit was substantially outweighed by the danger of unfair prejudice, it was error to admit the exhibit.

## V. *Judgment of Acquittal.*

■ The trial court denied the defendant's motion for acquittal of all criminal charges. Our standard of review of this motion is well established. *See Liggins,* 524 N.W.2d at 186. There is substantial evidence that Joann died as a result of being shot by Nance on October 20. The key issue needed to support the criminal charges is the intent of Nance at the time of the shooting. Intent is a state of mind; it may be established by circumstantial evidence and by inferences drawn from that evidence. *State v. Casady,* 491 N.W.2d 782, 787 (Iowa 1992). Excluding the evidence that was erroneously admitted by the court, the remaining evidence provides substantial evidence to support the criminal charges. Admissions may be implied by the conduct of the defendant subsequent to a crime when such conduct indicates a consciousness of guilt. *State v. Cox,* 500 N.W.2d 23, 25 (Iowa 1993). Here, the defendant made no effort to call an ambulance or the police after the shooting. At the defendant's request the body was moved out of his apartment. The defendant changed clothes, gave the gun to a friend

who agreed to dispose of it, and fled the scene. He asked Shorter to "help him out on this one" and later told Shorter that "he didn't do it."

The evidence as to how the gun "accidentally" discharged could be rejected by the jury as a false story. The use of a false story could also be treated as an implied admission. The defendant's reenactment of how the gun went off did not fit with the physical facts and the expert testimony produced at trial. The presence of flakes of blood inside the barrel of the gun indicated Joann was shot by a gun fired a few inches from the side of her head. There is ample circumstantial evidence to support the submission of the criminal charges.

**REVERSED AND REMANDED.**

All Justices concur except HARRIS, J., who concurs in the result only.