# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2088

_____

Jack Pfau,                                      *

                                       *

         Appellant,             *

                                       *   Appeal from the United States

   v.                               *   District Court for the

                                       *   Southern District of Iowa.

John F. Ault,                *

                                       *

         Appellee.             *

_____

Submitted: February 16, 2005
Filed: June 3, 2005

_____

Before LOKEN, Chief Judge, RILEY and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

After an Iowa jury found Jack Pfau (Pfau) guilty of first-degree robbery, the state trial court sentenced Pfau to twenty-five years' imprisonment. Pfau's appellate counsel sought direct review of Pfau's conviction, but moved to withdraw on the grounds the appeal was frivolous. After conducting an independent review of the record, the Iowa Supreme Court dismissed Pfau's appeal as frivolous. Pfau then sought post-conviction relief (PCR) in the Iowa state courts, and an Iowa district court denied PCR. On appeal, the Iowa Court of Appeals held Pfau had procedurally defaulted his asserted grounds for relief. Pfau then sought federal habeas relief, arguing deficient performance by both his trial counsel and his appellate counsel

violated the Sixth Amendment's guarantee of effective assistance of counsel. Rejecting Pfau's claims, the district court[1] dismissed Pfau's habeas application. We affirm.

## I. BACKGROUND

On May 14, 1997, the manager of a McDonald's restaurant and some of his employees left the restaurant just before midnight. The manager carried $1741 in a bank deposit bag. Acting on an inside tip from Gabe Delgado (Delgado), a McDonald's employee, two or three men robbed the manager at gun point and took the cash. The State of Iowa (State) charged Pfau with first-degree robbery and conspiracy to commit first-degree robbery. The State also charged other men for their involvement in the robbery. David Brewer (Brewer) pled guilty to conspiracy to commit robbery; Christopher Larkin (Larkin) pled guilty to second-degree robbery; and a jury acquitted Steven Moore (Moore).

At trial, Pfau's defense was he helped plan the robbery, but he decided not to participate in the robbery minutes before it took place. Despite Pfau's defense theory, the State presented an abundance of evidence implicating Pfau in the robbery. Brewer testified Pfau put bandanas "on his head and one around his mouth" before Brewer drove Pfau, Larkin and Moore to McDonald's on the night of the robbery. Moore testified Pfau's role during the robbery was "[t]o get the money from the manager." Moore testified Pfau followed through with this plan, and held "his gun up to the window on the driver's side, and he t[old the manager] to give him the money out of his truck." Moore testified Pfau possessed a loaded .357 handgun on the day of the robbery, and told the group he would shoot the manager to get the money if that is what it took. Moore also testified Pfau threatened to shoot Moore and Larkin if they did not participate in the robbery. Pfau's cousin testified at trial

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

she was surprised to see Pfau the day after the robbery with "a handful of money," including "50s and 20s."

A police detective testified he interviewed Pfau on the night of the robbery. According to the detective, Pfau first stated he had no knowledge of the robbery. Pfau later acknowledged he told Larkin and Delgado a few weeks before that he thought the robbery was a good idea because he needed the money. The detective testified Pfau admitted helping plan the robbery and that he went with the others on the night of the robbery, but "chickened out" at the last second.

Pfau admitted at trial he, Larkin, Brewer and Moore planned to (1) meet, and did meet, at Pfau's house, (2) wait for the tip from Delgado, and (3) then leave Pfau's house to a staging area near McDonald's. Pfau also admitted the plan had him running up to the manager and taking the money.

Larkin testified at Moore's trial, but then refused to testify at Pfau's trial. For his failure to testify, the trial court held Larkin in contempt, fined him $500, and sentenced him to six months' imprisonment. The State and Pfau's trial counsel then agreed to read Larkin's prior testimony to the jury, and, in exchange, to allow Pfau to present otherwise inadmissible hearsay evidence to the jury to impeach Larkin's testimony. According to Larkin, Pfau possessed a .357 handgun, threatened to kill anyone who did not participate in the robbery, and twice pointed the gun at Larkin when he attempted to back out of the robbery. Larkin also testified Pfau said he planned to kill the McDonald's manager if he did not give the money to Pfau.

Consistent with his defense, Pfau presented witnesses who testified Pfau decided on the night of the robbery not to participate in the robbery he helped plan. David Durst (Durst) and Mark Tabron (Tabron) testified Larkin told them Pfau did not participate in the robbery because he had "chickened out" on the night of the robbery.

A critical witness for Pfau was Cary Rice (Rice), whose testimony is at the heart of this appeal. Consistent with the testimony of Durst and Tabron, Rice testified he roomed with Larkin in the county jail, where Larkin told him Pfau had "chickened out" of the robbery. Once Pfau's trial counsel completed his direct examination of Rice, the State sought to question Rice on his relationship with Pfau and Rice's association with a group called Cyco. Outside the presence of the jury, the court and the parties discussed whether the State could question Rice about Cyco. Pfau's trial counsel objected to the evidence, arguing it was irrelevant and highly prejudicial.

To support its argument to admit the evidence, the State made an offer of proof. At the beginning of the offer of proof, the State believed Cyco was a gang; after the offer of proof, the State argued it did not want to mention gang involvement, but wanted to question Rice about Cyco to establish bias. Rice testified, outside the presence of the jury, that "Cyco is just my family and my friends. It's not a gang." Pfau's trial counsel, who had successfully moved in limine to exclude all references to gang involvement, argued the Cyco evidence was an attempt to get gang evidence before the jury so the jury would convict Pfau based on his gang involvement and not his involvement in the robbery. The trial court made the following ruling:

> Without any reference to gangs or the use of the term, I'm going to allow the State to in front of the jury inquire into this Cyco. If a witness belongs to the same club–4-H Club, neighborhood association, social club, or anything of the sort, that is relevant grounds probably for impeachment to show a relationship, and so that relationship, what it amounts to, can be inquired into. It is going to be direct. It is going to be relatively brief, but that association can be inquired into on the matter of relationship as it may go to bias or credibility and matters of that sort.

When the jury returned, the State briefly cross-examined Rice regarding Cyco. Rice told the jury Cyco simply referred to his family and friends, and that Pfau was not a Cyco. When asked whether Pfau sought to become a Cyco, Rice testified, "He's

not Cyco.  I haven't known him for years.  So he can't be.  I can't consider someone my friend just after a few days of talking to him after years of not seeing him."  When Pfau testified, he said he was not a Cyco, but admitted he had asked Rice's brother what it would take to become a Cyco.  Pfau testified he had considered becoming a Cyco and had written a letter to Rice's brother stating he would "do whatever it takes to become Cyco."  Pfau described Cyco as "a bunch of friends hanging out, you know, having fun, playing basketball[,] . . . staying out of trouble [i]nstead of like running the streets."  The term "gang" was never used in front of the jury.

Pfau also presented evidence that none of the descriptions of the robbers matched his physical description.  A police officer testified the manager said two black men robbed him at gun point.  Another witness also testified the robbers were black.  Pfau is white.

A jury convicted Pfau of first-degree robbery.  Pfau filed a post-trial motion for a new trial, contending the trial court erroneously allowed the State to introduce evidence about Cyco.  Noting the trial court had granted Pfau's motion in limine to exclude gang-related evidence, Pfau argued the Cyco evidence was "nothing more than innuendo that the Defendant was involved in gang-related activities," and the trial court's decision to allow the evidence deprived Pfau of a fair trial.  To support his argument that the Cyco evidence was inadmissible, Pfau cited State v. Nance, 533 N.W.2d 557, 562 (Iowa 1995), in which the Iowa Supreme Court declared "evidence of gang membership and activity is inherently prejudicial."  The State countered Pfau's argument and contended Nance's declaration did not apply to the Cyco evidence, because the Cyco evidence was not gang-related and it explained Rice's relationship with Pfau.  Rejecting Pfau's argument and noting gang evidence was not admitted, the trial court denied Pfau's motion for a new trial.  The court sentenced Pfau to twenty-five years' imprisonment.

Pfau's appellate counsel filed a brief in the Iowa Supreme Court under Iowa Rule of Appellate Procedure 104 (currently Rule 6.104), which governs frivolous appeals and appellate counsel's ability to withdraw. Complying with his duties under Rule 104, Pfau's appellate counsel provided the supreme court a detailed factual background and alerted the court to a number of appealable issues, but deemed all issues frivolous and sought permission to withdraw. Pfau's appellate counsel specifically raised the issue of whether the trial court erred in admitting evidence about Cyco, and whether that evidence prejudiced Pfau's right to a fair trial. Pfau's appellate counsel first argued the State used the Cyco evidence "to prejudice the defendant in the eyes of the jury by connecting him to a group that looked like and sounded like a gang." Appellate counsel implied the trial court erroneously admitted this evidence because it "carried with it the charged negative aura of gangs and gang activity." Appellate counsel did not cite Nance. Despite his attack on the admissibility of the gang-related evidence, appellate counsel acknowledged, "Despite the [trial] court's arguable error in admitting this evidence defendant can not claim that he was prejudiced by the admission of this evidence," because "[t]he evidence of defendant's participation in the robbery was overwhelming."

As required by Rule 104, appellate counsel wrote a letter to Pfau explaining Rule 104's requirement that Pfau, if he disagreed with appellate counsel's motion to withdraw, was required to alert the supreme court to the meritorious issues appellate counsel overlooked. Pfau wrote a letter to the supreme court responding to appellate counsel's motion to withdraw. Pfau's letter raised four issues, but did not mention the evidence relating to Cyco.

After acknowledging it received appellate counsel's motion to withdraw under Rule 104 and Pfau's response to the motion, the supreme court expressly stated it conducted an "independent review of the record." Based on that independent review, the court "conclude[d] the defendant's appeal is frivolous," granted appellate counsel's motion to withdraw, and dismissed Pfau's appeal pursuant to Rule 104.

-6-

Contending his trial and appellate counsel were constitutionally ineffective, Pfau then sought PCR in an Iowa district court. At an evidentiary hearing, Pfau's trial counsel testified he told Pfau's appellate counsel the jurors "felt that the Cyco was a name for a gang and Mr. Pfau was a part of it." Pressing his ineffective assistance claim, Pfau argued his appellate counsel's failure to specifically cite Nance proved counsel was ineffective. In a thorough and persuasive opinion, the Iowa district court rejected Pfau's theory for relief. The court concluded "the Supreme Court had conducted its own 'independent review' of the case," and had decided Pfau's direct appeal "based upon that review, not upon appellate counsel's citation or lack of citation or authority." The court found it "begs belief that the Supreme Court, having itself written Nance scarcely three years earlier, would have overlooked that case's holding" in deciding Pfau's appeal. Determining "the Supreme Court applied Nance and concluded that the trial court had not abused its discretion in allowing limited cross-examination of Rice" about Cyco, the district court held Pfau was not entitled to relief.

Pfau then appealed the district court's denial of relief to the Iowa Court of Appeals. That court affirmed the district court's denial of PCR, but on different grounds. Specifically, the court held Pfau's claims were procedurally defaulted because Pfau failed to raise the issue in his response to his attorney's motion to withdraw in the direct appeal, i.e., Pfau failed to assert the trial court erred in admitting the evidence relating to Cyco. Pfau v. State, 644 N.W.2d 700, 703 (Iowa Ct. App. 2002). The Iowa Supreme Court denied further review.

Enjoying no success in the state courts, Pfau turned his sights on the federal habeas system. Pfau asserted the same two grounds for relief, i.e., ineffective assistance of both trial and appellate counsel. The district court denied habeas relief, finding Pfau's appellate counsel did not provide ineffective assistance. The court provided compelling reasons for concluding Pfau's ineffective assistance of appellate counsel claim was meritless. First, the court found it significant that the Iowa

Supreme Court conducted an independent review of the record, which included trial counsel's arguments, and citation to Nance, before the trial court. Recognizing appellate counsel raised the Cyco issue on appeal, the supreme court independently reviewed the record, and the PCR court held appellate counsel's performance was adequate, the district court was unable to quarrel with the state court rulings. Second, the district court specifically found "appellate counsel provided constitutionally adequate assistance." For support, the court recognized appellate "[c]ounsel thoroughly addressed the [Cyco] issue in his Rule 104 motion, and during postconviction proceeding Pfau's appellate counsel reiterated his opinion that the evidence against Pfau was overwhelming." The district court found that, even if appellate counsel would have cited Nance "to the Iowa appellate courts, there is not a reasonable probability that Pfau's argument would have succeeded." For support, the court noted "there was substantial eyewitness testimony that Pfau planned and participated in the robbery," Pfau's own witness "occasioned the implied references to gangs," the State simply tried to point out witness bias, the term "gang" was not used before the jury, and Rice himself testified Pfau was not a Cyco. Finally, the district court concluded any evidentiary error was harmless, because "the evidence that Pfau committed the robbery was overwhelming." The district court granted a certificate of appealability on the grounds Pfau asserted in his application for habeas relief. On appeal, Pfau asserted only the ineffective assistance of appellate counsel claim.

## II.    DISCUSSION

### A.    Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court must grant habeas relief if a "claim that was adjudicated on the merits in State court proceedings . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C.

-8-

§ 2254(d)(1)-(2).  When a petitioner's claim has not been "adjudicated on the merits," a federal court cannot apply the deferential AEDPA standards.  Armstrong v. Kemna, 365 F.3d 622, 626 (8th Cir. 2004); see also Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004) (en banc) (stating a condition precedent to applying AEDPA's standard of review is that the state court adjudicated the petitioner's claim on the merits).  In an appeal from the denial of federal habeas relief, we review de novo the district court's legal conclusions and for clear error its factual findings.  Armstrong, 365 F.3d at 626.

We first address whether we must apply the deferential AEDPA standards or conduct a de novo review of Pfau's claim that his appellate counsel's performance was so deficient it violated the Sixth Amendment's guarantee of effective assistance of counsel.  Ordinarily, the answer to this question would be found by deciding whether the state courts adjudicated Pfau's claim on the merits.  Pfau's Sixth Amendment ineffective assistance claim is doomed to failure whether we apply a de novo standard or follow AEDPA's mandate.  Choosing to avoid entanglement in the Iowa procedural irregularities in this case, and giving Pfau the benefit of the doubt in his habeas appeal, we will conduct a de novo review of his Sixth Amendment claim.[2]

### B.    Ineffective Assistance of Appellate Counsel Claim

Pfau's overriding complaint is his appellate counsel did not understand Iowa evidence law, which resulted in a violation of federal law of constitutional proportion. To prove his appellate counsel rendered ineffective assistance in violation of the Sixth Amendment, Pfau must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  First, Pfau must show his appellate counsel's

---

[2]Our decision to conduct a de novo review should not be construed to mean we hold AEDPA does not apply to this appeal.  Because AEDPA's application is a close question and because we would affirm the denial of habeas relief regardless of the standard applied, we choose to give Pfau's claim a thorough vetting.

performance was deficient, i.e., objectively unreasonable. Id. at 688. To satisfy this first prong, Pfau must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Even if Pfau could satisfy the first prong, he still must establish the second prong by showing his counsel's deficient performance prejudiced him with an unreliable or fundamentally unfair outcome. Id. at 692. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693. Instead, professional deficiencies on the part of Pfau's appellate counsel will only provide constitutional relief if the deficiencies actually affected Pfau's appellate proceedings, because the Sixth Amendment strives "to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." Cf. id. at 691-92. To prevail on his Sixth Amendment ineffective assistance claim, Pfau "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Pfau can only prevail on appeal if he convinces us there is a reasonable probability that, but for his appellate counsel's failure to cite Nance, he would have prevailed before the Iowa Supreme Court. Regardless of whether appellate counsel's performance was deficient, no reasonable probability exists that appellate counsel's citation to Nance would have resulted in the Iowa Supreme Court reversing the trial court's evidentiary decision relating to the Cyco evidence. Therefore, Pfau suffered absolutely no prejudice from his appellate counsel's failure to cite Nance in his Rule 104 brief. Our conclusion is buttressed by the original trial court's use of its discretion in handling the Cyco evidence, the Iowa Supreme Court's independent review of the issue on appeal, the PCR court's thorough and well-reasoned discussion of the issue, the district court's analysis denying habeas relief, and the overwhelming evidence against Pfau.

We are confident the trial court did not abuse its discretion in allowing the limited evidence about Cyco at trial, especially after Pfau's own defense opened the door to this relevant evidence.  See State v. Sallis, 574 N.W.2d 15, 16 (Iowa 1998) (stating Iowa courts "grant the district court wide latitude regarding admissibility [of prejudicial evidence] and will disturb the court's ruling only upon finding an abuse of discretion").  The trial court took great pains to ensure the questioning of Rice about Cyco was brief and did not invoke a discussion about gangs.  The State heeded the trial court's caution, and briefly discussed Cyco solely to impeach Rice.

We also read Nance far differently than does Pfau.  Nance did not announce that gang-related evidence is never admissible. See, e.g., Wedebrand v. State, No. 02-0568, 2003 WL 21543146, at *5 (Iowa Ct. App. July 10, 2003) (unpublished) (holding appellate counsel did not provide ineffective assistance of counsel by failing to appeal district court's decision to admit evidence that defendant was a member of a gang, because "gang membership was relevant to show motive and intent"); State v. Dixon, No. 00-829, 2001 WL 1450991, at *4 (Iowa Ct. App. Nov. 16, 2001) (unpublished) (concluding "evidence of a victim's gang membership is not inherently prejudicial" in a "case where no evidence was introduced regarding the defendant's membership in a gang"); State v. Allen, No. 98-2012, 2000 WL 767686, at *2 (Iowa Ct. App. June 14, 2000) (unpublished) (holding the trial court did not abuse its discretion by admitting gang-related evidence).  Instead, Nance announced that "evidence of gang membership and activity is inherently prejudicial" because that evidence "appeals to the jury's instinct to punish gang members."  Nance, 533 N.W.2d at 562.  The Iowa Supreme Court held in Nance that, given the facts of that case, the danger of unfair prejudice to the defendant substantially outweighed the probative value of the gang-related evidence.  Id.  In Pfau's trial, gang membership and activity was never discussed.  Furthermore, Rice testified Pfau was not a Cyco. Nance does not provide sufficient support for the relief Pfau seeks in federal court. The probative value of the Cyco evidence outweighed any unfair prejudice of implied gang membership.

We also find it telling that the Iowa Supreme Court conducted an independent review of the record and concluded Pfau's appeal was frivolous. Even though Pfau's appellate counsel did not cite Nance, appellate counsel clearly raised the Cyco issue. Pfau's trial counsel raised and argued Nance before the trial court. The trial court expressly limited the State's examination of Rice to forbid any reference to gangs and to keep the examination brief. The Iowa Supreme Court had all of this information before it when it independently reviewed the record. It is reasonable to believe the Iowa Supreme Court was fully aware of the gang issue as it related to the Cyco evidence, knew about its own decision in Nance, and concluded the trial court did not abuse its discretion in the way it handled the Cyco evidence. Given the Iowa Supreme Court's independent review of the record and its holding that Pfau's appeal was frivolous, we undoubtedly would usurp our role if we decided the Iowa Supreme Court failed to apply its own law. See Bell v. Cone, 125 S. Ct. 847, 853 (2005) (admonishing federal courts not to "presume so lightly that a state court failed to apply its own law"). Our observation that the Iowa Supreme Court would not have granted relief even if appellate counsel had cited Nance is strengthened by the PCR court's persuasive decision that the Iowa Supreme Court applied the teachings of Nance. Because we have no interest in deciding state law, but rather focus on whether appellate counsel's performance was constitutionally deficient, we give special weight to the PCR court's decision.

Finally, the State's case against Pfau did not hinge upon the Cyco evidence. As found by the trial court, Pfau's appellate counsel, the PCR court, and the district court below, the State presented overwhelming evidence that Pfau planned and participated in the robbery. Although we conclude the Iowa Supreme Court decided the trial court did not erroneously admit the Cyco evidence, we also conclude, even if the trial court did erroneously admit this evidence, it constituted harmless error beyond a reasonable doubt, which means Pfau suffered no prejudice from his appellate counsel's failure to cite Nance. See, e.g., Odem v. Hopkins, 382 F.3d 846, 851-52 (8th Cir. 2004) (holding Strickland's prejudice prong was not met because of

overwhelming evidence of guilt); <u>Bear Stops v. United States</u>, 339 F.3d 777, 782 (8th Cir. 2003) (holding <u>Strickland</u>'s prejudice prong was not met because appellate counsel's failure to raise an evidentiary issue would not have altered the result of the proceedings because the erroneous admission of evidence would have constituted harmless error beyond a reasonable doubt); <u>Collins v. Dormire</u>, 240 F.3d 724, 727-28 (8th Cir. 2001) (holding defendant did not show prejudice to support ineffective assistance of appellate counsel claim because any evidentiary error was harmless).[3]

## III.   CONCLUSION

We affirm the district court's dismissal of Pfau's application for a writ of habeas corpus.

_____

_____

[3]Pfau does not raise claims that his rights to due process or to a fair trial were violated by the trial court's decision to allow testimony about Cyco. <u>See</u>, <u>e.g.</u>, <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-70 (1991) (discussing whether state court's evidentiary decision violated federal constitutional rights). Pfau is content to attack his appellate counsel's failure to cite a single Iowa case on evidence.