# IN THE COURT OF APPEALS OF IOWA

No. 14-1821
Filed March 23, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DERRICK JAMAAL MCELROY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Webster County, Kurt L. Wilke,

Judge.


        Derrick McElroy appeals his conviction for first-degree murder.

**AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Bradley M. Bender,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Jean C. Pettinger, Assistant

Attorney General, for appellee.


        Heard by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

The State charged Derrick McElroy with first-degree murder in connection with the shooting and subsequent death of a young Fort Dodge man. A jury found McElroy guilty. On appeal, McElroy challenges the sufficiency of the evidence supporting the jury's finding of guilt and the court's refusal to grant a new trial based on the weight of the evidence. He also contests several evidentiary rulings including the district court's admission of certain evidence of gang affiliation. Finally, he takes issue with the district court's decision to disallow cross-examination of a witness about disciplinary action taken against the witness.

*I.      Sufficiency of the Evidence/Weight of the Evidence*

*A.      Sufficiency of the Evidence*

The jury was instructed the State would have to prove the following elements of first-degree murder:

> (1) On or about the 8th day of May, 2011, the Defendant shot Brandyn Preston;
> (2) Brandyn Preston died as a result of being shot;
> (3) The Defendant acted with malice aforethought;
> (4) The Defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill a person.

McElroy asserts "the evidence submitted did not support a finding that he was the person who committed the crime." He points out there was "no eyewitness to this shooting," no one saw him near the location of the shooting, and the State's circumstantial evidence against him was weak and contradictory. Our review is for substantial evidence. *See State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015).

A reasonable juror could have found the following facts. Brandyn Preston was shot in his neck while attending an outdoor party. The bullet struck his spinal cord, which caused paralysis, bronchopneumonia, and ultimately, death.

Fort Dodge police officers searched a home near the party site, where McElroy sometimes stayed. They "found a .22-caliber [Ruger] semi-automatic rifle" underneath a pile of clothes. The rifle owner, Andrew Schulte, testified that several months earlier McElroy saw the gun at his apartment. When Schulte moved out of the apartment he "noticed the rifle was missing."

A criminalist with the Iowa Division of Criminal Investigation positively identified a bullet recovered from Preston "as having been fired from [the] Ruger .22-caliber rifle." Another criminalist testified a "weak major [DNA] profile" on the scope of the rifle was consistent with McElroy's DNA profile.

An acquaintance of McElroy, Brent Lamp, testified that McElroy confessed to the shooting and said he was "laying low." Although Lamp had a powerful incentive to testify for the State in light of pending drug charges, and his testimony contradicted other evidence in key respects, it was up to the jury to reject or credit the evidence. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Viewing the evidence in a light most favorable to the State, we conclude substantial evidence supports the jury's finding of guilt. *Robinson*, 859 N.W.2d at 467.

### B.     Weight of the Evidence

McElroy next contends the district court should have granted his motion for new trial on the ground the jury's finding of guilt was not supported by the weight of the evidence. In his view, "the evidence supporting the verdict was so

scanty and the evidence opposing it was so compelling" that the court should not have denied the motion.

Iowa Rule of Criminal Procedure 2.24(2) allows a court to grant a new trial "[w]hen the verdict is contrary to law or evidence." The district court correctly cited the heavy standard for granting a new trial on this ground: "Except in the extraordinary case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts." *See State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). Our review "is limited to a review of the exercise of discretion by the trial court, not the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003). We will reverse only if we find an abuse of discretion. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006).

The district court declined to grant a new trial, reasoning as follows:

> Here, the evidence shows that defendant had possession of a weapon that was stolen from a residence which he frequented and that he knew about the weapon. The weapon was found hidden in the basement of the defendant's grandfather not far from the scene of the shooting. The weapon was used to kill Brandyn Preston. The defendant's DNA was definitively matched to a DNA sample taken from the weapon. The defendant was in the area when the shooting occurred. The defendant told Brent Lamp facts about the shooting that only the shooter would know and Mr. Lamp would not have known, such as the fact that the murder weapon was a rifle, semi-automatic in nature, capable of firing multiple rounds in short order, that multiple rounds were fired, and that the murder weapon had a scope.

The district court properly exercised its discretion. Although the record does not support a "definitive match[]" of the DNA and, as noted, Lamp's testimony was significantly impeached, we cannot conclude the district court abused its discretion in denying the new trial motion.

## II. Evidentiary Rulings

McElroy challenges several evidentiary rulings: (A) the admission of photographic evidence showing his gang affiliation, (B) the admission of photographs of Preston in a wheelchair and ventilator, and (C) the exclusion of certain text messages. The third challenge was not preserved for our review.[1] Accordingly, we will only address the first two evidentiary issues.

### A. Photographs of Gang Affiliation

Prior to trial, McElroy filed a motion in limine seeking to prevent the State "from offering evidence or testimony regarding the interpretation or 'meaning' of any tattoos on [his] person." The district court granted the motion, reasoning "the probative value of the tattoo evidence [was] substantially outweighed by the danger of unfair prejudice." The court stated it might "revisit this ruling should the State provide direct evidence in support of its position regarding the meaning of Defendant's tattoos."

At trial, the State offered photos of McElroy's tattoos. The State also offered photos depicting McElroy using a gang symbol. McElroy objected to the evidence. The district court overruled the objection, reasoning, "We've had various people testify regarding [McElroy's] association or non-association with this group called the Bloods." The photos were admitted.

---

[1] An officer with the Fort Dodge police department was slated to testify to his investigation of text messages on a cell phone belonging to Ari Vodraska. The State objected on hearsay grounds. McElroy responded that Vodraska was under subpoena to testify but might not be cooperative. The court suggested McElroy elicit the officer's testimony outside the presence of the jury via an offer of proof and, if Vodraska testified contrary to the offer-of-proof testimony, the court would admit the offer-of-proof testimony. The State and defense agreed to this procedure. Ultimately, Vodraska did not testify due to a medical condition. The State and defense admitted a stipulation regarding her expected testimony which did not contradict the offer-of-proof testimony. Ultimately, McElroy did not seek to admit the offer-of-proof testimony.

A Des Moines detective with gang expertise interpreted the photographs. He testified the red five-pointed star on McElroy's neck and three other tattoos which together spelled "MOB" were consistent with the Bloods gang. The detective also testified McElroy's "hand signal" depicted in other photographs was associated with the Bloods gang.

McElroy contends the photographs were irrelevant to any issue in the case. The State counters that the evidence was relevant to establish McElroy's motive, and its probative value was not outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403.[2] We need not engage in an analysis of the evidence's relevancy or review the district court's balancing of the probative value of the evidence against its prejudicial effect because even if the evidence was erroneously admitted,[3] reversal is not necessarily required. *See State v. Rodriquez*, 636 N.W.2d 234, 244 (Iowa 2001).

The test for determining whether reversal is required for a nonconstitutional error such as the erroneous admission of evidence is: "Does it sufficiently appear that the rights of the complaining party have been injuriously affected by the error or that he has suffered a miscarriage of justice?" *State v. Trudo*, 253 N.W.2d 101, 107 (Iowa 1977); *see also State v. Henderson*, 696 N.W.2d 5, 12-13 (Iowa 2005) ("Reversal is required in cases of nonconstitutional error when it appears 'that the rights of the complaining party have been

---

[2] The State does not argue the evidence was "inextricably intertwined" with the charged offense and, at oral argument, conceded this was not an argument on which it was relying. *See State v. Nelson*, 791 N.W.2d 414, 419-20 (Iowa 2010); *State v. Caples*, 857 N.W.2d 641, 645 (Iowa Ct. App. 2014).

[3] In *State v. Nance*, 533 N.W.2d 557, 562 (Iowa 1995), the Iowa Supreme Court held "gang notes" were erroneously admitted. The court reasoned "the probative value . . . was substantially outweighed by the danger of unfair prejudice." *Nance*, 533 N.W.2d at 562.

injuriously affected by the error or that he has suffered a miscarriage of justice.'" (citation omitted)). "An ancillary rule is . . . ordinarily, a defendant may not claim prejudice where the same evidence is otherwise supplied by the defendant or is made overwhelmingly clear in the record." *Trudo*, 253 N.W.2d at 107-08. This ancillary rule is dispositive.

The State theorized McElroy committed the crime because he was a member of the Bloods and was engaged in a feud with the Gangster Disciples. In furtherance of this theory, the State offered extensive gang-related evidence, including evidence that McElroy was associated with the Bloods.

The evidence began entering the record with the State's second witness, the host of the party at which Preston was shot. The prosecutor asked this witness whether McElroy "was part of a group," a term the prosecutor used to refer to gangs. The witness answered, "Yes." The prosecutor continued, "And what was that group?" The witness answered, "They called themselves the 'Bloods.'" The prosecutor later asked the same witness, "And did the Defendant do anything with his hands to show any association with this group?" The witness responded by holding three fingers up and making a high circle with her index finger and thumb, the precise sign depicted in some of the challenged photos. The prosecutor asked, "And what does that represent?" The witness answered, "Blood Gang."

The State continued to introduce gang-related evidence through other witnesses. For example, the prosecutor engaged in the following exchange with another witness: "Q. [W]ere there groups, two groups of people that weren't getting along in Fort Dodge? A. Yes. Q. To your knowledge, did the Defendant

belong to one group? A. Yes. Q. What group did the Defendant belong to? A. The Bloods." McElroy did not object to this evidence, presumably because gang affiliation testimony bolstered his theory that the crime was committed by someone in the Jack Boys gang, a subset of the Bloods. Indeed, he introduced gang-related evidence of his own.

By the end of trial, unchallenged evidence of gang affiliation permeated the record. In light of this duly-admitted evidence, the photographs and the detective's interpretation of the photographs as signifying McElroy's affiliation with the Bloods was cumulative. *See State v. Jurgenson*, 225 N.W.2d 310, 312 (Iowa 1975) (stating "error in the admission of evidence is not prejudicial where substantially the same evidence is in the record without objection"); *State v. Mablin*, No. 08-1180, 2009 WL 2185552, at *6 (Iowa Ct. App. July 22, 2009) ("[W]e cannot see how Mablin suffered a miscarriage of justice by the admission of Pastor Giminez's brief testimony, which merely corroborated a large volume of other evidence demonstrating Mablin's calculating untruthfulness."); *In re Estate of Hettinga*, 514 N.W.2d 727, 733 (Iowa Ct. App. 1994) ("Evidence which is cumulative, which only corroborates other evidence properly in the record, does not constitute reversible error."). Assuming without deciding the admission of this evidence was erroneous, we conclude the admission does not require reversal.

### B. Photographs of Preston in Wheelchair

At trial, the State offered two photos of Preston after the shooting. One showed him sitting in his wheelchair and another showed him attached to a ventilator. McElroy objected to the admission of the photographs as irrelevant and unfairly prejudicial. The district court overruled the objection. The court

reasoned the evidence was relevant to allow the jury to see "in what condition the victim was over the period of six or seven months, because there has to be a connection between the actual wound and his death." On appeal, McElroy reprises his challenge to the pictures.

"[P]hotographs are not inadmissible simply because they are 'gruesome or may tend to create sympathy.'" *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013) (citation omitted). We are inclined to agree with McElroy that these photographs were offered primarily, if not solely, to evoke sympathy. The State did not need these photos to establish the element of death because a pathologist testified to Preston's condition and the causal connection between the shooting and his ultimate death. Nonetheless, the pictures had marginal relevance in elucidating the pathologist's testimony.[4] *See State v. Brown*, 397 N.W.2d 689, 700 (Iowa 1986) (holding that where pathologist "testified extensively with respect to the nature, extent, and severity of [victim's] wounds," the "autopsy photographs were relevant to illustrate and explain [pathologist's] testimony"). And the pictures were far from unfairly prejudicial. As the court stated in *Brown*, "Murder is often a gruesome affair giving rise to equally gruesome evidence." *Id.* These photos were not gruesome. Because the probative value of the photos was not outweighed by the prejudicial effect, we affirm the district court's admission of these photographs.

---

[4] Although these photographs were admitted through Kimberly Wood, Preston's mother, they bore on the pathologist's testimony regarding paralysis.

### III. Cross-Examination of Witness

Iowa Division of Criminal Investigation Criminalist Larry Hedlund, testified at trial. Before trial, Hedlund was disciplined and fired from the department of criminal investigation. McElroy sought to have the State produce an internal report on this action. At the State's behest, the district court reviewed the report in camera, found it "contain[ed] no exculpatory evidence that could potentially be used to impeach . . . Hedlund," and ordered it "not be made available to the Defendant." McElroy argues he should have been allowed to review the documents and cross-examine Hedlund with the contents of the internal disciplinary report.

This court addressed a virtually identical issue in *State v. Garrison*, No. 04-0141, 2006 WL 138280, at \*17 (Iowa Ct. App. Jan. 19, 2006). The court concluded internal disciplinary records were "prima facie exempt from disclosure as personal information in confidential personnel records." *Garrison*, 2006 WL 138280, at \*19; *see also* Iowa Code § 22.7(11) (2015). The court further concluded "the district court did not abuse its discretion in determining the documents in question do not contain exculpatory information that should be disclosed." *Id. Garrison* is persuasive authority.

Here, the district court determined, "There was nothing in the report concerning Mr. Hedlund's investigation in . . . [McElroy's] case, nor was there anything contained in the report that might call into question Mr. Hedlund's investigation techniques in any other case." On our review of the confidential information, we agree with this assessment. Accordingly, we discern no abuse of discretion in the court's refusal to disseminate the report to McElroy or allow

cross-examination with the contents of the report. Any remaining arguments concerning this issue were not preserved for review and, even if reviewed under an ineffective-assistance-of-counsel rubric, would not have generated a reasonable probability of a different outcome.

We affirm McElroy's judgment and sentence for first-degree murder.

**AFFIRMED.**